OPINION
Appellant Virginia Rodgers appeals a judgment of the Stark County Common Pleas Court, Juvenile Division, awarding permanent custody of her daughter, Hasha Taylor, to the Stark County Department of Human Services:
ASSIGNMENTS OF ERROR:
 I. THE TRIAL COURT ERRED BY ALLOWING ROSE MORGAN TO TESTIFY AT TRIAL WHEN SHE WAS PRESENT IN THE COURTROOM DURING THE ENTIRE TRIAL, WAS NOT NAMED A PARTY DESIGNATED BY THE DEPARTMENT OF HUMAN SERVICES AND THE COURT HAD PREVIOUSLY ORDERED A SEPARATION OF WITNESS.
 II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
In 1993, when she was fifteen years old, appellant ran away from home. In May of 1994, when appellant was sixteen years old, she was picked up by the police on petty theft charges. Appellant was pregnant at the time with Hasha. Hasha's father was James Taylor, who had an extensive and violent criminal history. Appellant was placed in the temporary custody of the Stark County Department of Human Services (DHS) on June 8, 1994. Appellant was moved from a secured facility to an unsecured facility. Within a day of being placed in the less restrictive facility, she ran away. Appellant was found when she gave birth to Hasha in late August, 1994. DHS located her at that time, even though she gave a false name to the hospital.
Appellant was charged with violation of a prior court order. She pled true to the complaint and was placed in the custody of DHS. She was seventeen years old at the time. DHS located a foster placement in which both appellant and Hasha could be placed together. A condition of appellant's placement was that she not have any contact with James Taylor. Less than three weeks after appellant and Hasha were placed together for the first time, they had to be moved. At that time, DHS discovered letters from appellant to James Taylor.
On the day she was removed from the foster home, appellant again ran away. She appeared three days later at the emergency shelter care hearing. A no contact order was issued between James Taylor, appellant, and the child. DHS again found a foster home for appellant, and began attempting to integrate Hasha into that home in March of 1995. The integration of Hasha into the home was delayed, as appellant skipped a substantial amount of school during the Spring of 1995. On April 28, 1995, appellant was raped and physically assaulted by James Taylor. She refused to pursue criminal prosecution of Taylor.
Finally, on May 5, 1995, appellant and Hasha were placed together for a second time. A few weeks later, appellant ran away from the foster home, taking Hasha with her. Hasha was located several days later, but her caretaker refused to turn her over to DHS. Appellant appeared at the Child and Adolescent Service Center with Hasha, and DHS took Hasha into custody at the time. Appellant was charged with interference with custody, and pled true to the charge. She was sentenced to the Attention Center until she turned eighteen years old, in July of 1996.
After appellant was released from the Attention Center in July of 1996, Hasha was returned to her legal and physical custody. Appellant's caseworker set up weekly home calls, and talked to her about the importance of coming to DHS for help if she had any problems. Two days after Hasha was returned to her care, appellant was arrested for solicitation. She later pled guilty to the charge.
DHS assumed temporary custody of Hasha once again, and filed a motion for permanent custody. The case proceeded to a hearing in the Stark County Common Pleas Court, Juvenile Division. Following the evidentiary hearing, the court terminated the parental rights of both appellant and James Taylor, and granted the motion for permanent custody.
 I.
Appellant argues that the court erred in allowing Rose Morgan, appellant's DHS caseworker, to testify. Appellant argues that Ms. Morgan remained in the courtroom despite an order for separation of witnesses and, therefore, should not have been allowed to testify.
The trial court has broad discretion in determining whether to admit or exclude evidence. State vs. Sage (1987),31 Ohio St.3d 173. To demonstrate an abuse of discretion, the court's ruling must be unreasonable, arbitrary, or unconscionable. E.g., Blakemore vs. Blakemore (1983)5 Ohio St.3d 217.
Evid.R. 615 provides that at the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. However, the rule does not authorize exclusion of a party who is a natural person, or an officer or employee of a party which is not a natural person, designated as its representative by its attorney.
Contrary to the argument of appellee, Rose Morgan was not designated as the legal representative of appellee. When she introduced the case, Attorney Sawyers stated:
 ". . . Tammy Barnes is here on behalf of the Department of Human Services. She was the former Family Service Worker, Rose Morgan is the ongoing Family Service Worker, my name's Paula Sawyers, I represent the Department . . . ."
Tr. 4.
When the trial resumed on a later date, Attorney Sawyers again introduced the parties:
 ". . . Helen Stavrakis is here on behalf of Friends of Children as Guardian Ad Litem, Rose Morgan is the Family Service Worker, my name's Paul Sawyers, I represent the Department . . . ."
Tr. 130.
Although Ms. Morgan was introduced by the attorney at the beginning of both days of the hearing, it appears from the record that Attorney Sawyers named Tammy Barnes as the designate appearing on behalf of the Department of Human Services.
Rose Morgan testified as the second of two witnesses in appellee's case-in-chief as to James Taylor, who has not appealed the permanent custody order. When the hearing proceeded to evidence concerning appellant, Rose Morgan was the ninth witness to testify on behalf of DHS, and testified directly after appellant was called on cross-examination by appellee. Ms. Morgan was the first and only witness to testify on behalf of DHS during the best interest portion of the hearing.
While we believe that better practice would be to designate someone other than the ongoing case worker as the representative of DHS, the record does not reflect that appellant was prejudiced by Ms. Morgan's presence in the courtroom prior to her testimony. Ms. Morgan's testimony consisted of evidence accumulated by her during her work with appellant and Hasha. She does not appear to have gained any benefit to her testimony from hearing the testimony of appellant, or any other witness. Although we do not sanction the presence of a critical witness in the courtroom during the entire proceedings prior to her testimony, in direct violation of a separation of witnesses order, we cannot find that the court abused its discretion in allowing Ms. Morgan to testify in the instant case.
The first Assignment of Error is overruled.
 II.
Appellant argues that the court's finding that Hasha could not be placed with her in a reasonable time was against the manifest weight of the evidence.
Appellant is correct is asserting she substantially complied with the objections in her case plan. However, appellant still failed to remedy the problems which led to the removal of Hasha from her home. Appellant was reunified with Hasha on three occasions. Shortly after each reunification, she made extremely poor parenting decisions. The first two times Hasha was placed with appellant, she ran away almost immediately thereafter. The third time she was given custody of Hasha, she was arrested for and convicted for prostitution. Despite the no contact order, and a history of violence when in contact with James Taylor, appellant continued to have contact with Taylor. Her psychological evaluation states that she was likely to be a poor risk at being a consistent, dependable, and effective parent to Hasha within the foreseeable future. The evaluation further concluded that appellant was at risk for failing to benefit from past experiences, demonstrating poor judgment, and engaging in behavior which is self-defeating. The evidence demonstrated that despite substantial compliance with the case plan, appellant did not apply the information gained from the programs in which she participated, and did not remedy the problems which caused Hasha to be placed with DHS. As appellant continued to make poor decisions regarding her own life and Hasha's, the judgment finding that she could not assume custody of Hasha within a reasonable time was not against the manifest weight of the evidence.
The second Assignment of Error is overruled.
 III.
Appellant argues that the judgment finding the grant of permanent custody to DHS to be in Hasha's best interest is against the manifest weight of the evidence.
There was evidence that after appellant was arrested in 1996, bonding between appellant and Hasha had been severely disturbed. At the first visit after her arrest, Hasha clung to the social worker. In subsequent visits, Hasha continued to look for the worker during such visits. Appellant was still a minor when Hasha was born. Appellant only assumed custody of Hasha for two days of Hasha's life. On the three occasions when Hasha was placed with her, appellant almost immediately made choices which required the removal of Hasha from her care. Hasha had bonded extremely well to her foster parents, who wished to adopt her. The judgment finding an award of permanent custody to in Hasha's best interest is not against the manifest weight of the evidence.
The third Assignment of Error is overruled.
The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.
By: Reader, J., Hoffman, P. J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed. Costs to appellant.